## APPEAL OF T. MASON RICHARDS.

[RICHARDS, BURGESS, v. McGOUGH, ET AL., COUNCIL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF CAMBRIA COUNTY, IN EQUITY.

Argued October 8, 1888—Decided October 29, 1888.

1. After proof of its loss, the contents of a record of judicial proceedings, like any other document, may be proved by secondary evidence not disclosing the existence of other and better evidence, without being first supplied under the provisions of § 26, act of April 25, 1850, P. L. 573.
2. But to authorize memoriter proof of a lost record, the witness must have read it, or otherwise have actual knowledge of it and be able to speak at least as to the substance of its contents.
3. Whether the burgess of a borough organized under the general borough law of April 3, 1851, P. L. 320, has the right to preside and vote at the meetings of the council, not being properly raised, is not decided.

Before GORDON, C. J., PAXSON, STERRETT, CLARK and WILLIAMS, JJ.; GREEN and HAND, JJ., absent.

No. 160 October Term 1888, Sup. Ct.; court below, No. 3 June Term 1888, in Equity.

On March 30, 1888, Daniel McGough and others, as the duly elected and qualified members of council of Ebensburg borough, filed a bill in equity against T. Mason Richards, as the duly elected and qualified burgess of said borough, averring that said borough was originally incorporated by the act of January 15, 1825, 8 Sm. L. 354, "and that subsequently, by proceedings in court, all the rights and privileges of the act of assembly of 1851, known as the general borough law, were extended to said borough;" that the said T. Mason Richards, as

the burgess of said borough, was present at the meeting of council, on March 26, 1888, " and undertook to interfere with the deliberations of council, and to intermeddle in the election of officers for the borough, by attempting to cast his vote for certain nominees or candidates, thereby causing the council to adjourn without having performed the duties required of them; that by the acts of the defendant, burgess, the members of council are prevented from the performance of their duties as such, and from the proper and legal election of the officers of the said' borough; that all the acts, elections, ordinances by the said borough council will be illegal and void if the said T. Mason Richards, burgess, be not restrained from presiding at or attempting to interfere with the deliberations of council;" praying for an injunction.

A preliminary injunction was awarded as prayed for, on the filing of the bill, and on April 9, 1888, the parties met pursuant to a notice by the defendant of a motion to dissolve the injunction. An answer had been prepared, the jurat thereto being dated April 7, 1888, but the paper-books did not show that it had been filed. The plaintiffs obtained a continuance of the hearing on the motion to dissolve, and *Mr. E. G. Kerr* was appointed " commissioner" to take testimony. His report was filed on June 8, 1888.

On July 2, 1888, the court JOHNSTON, P. J., filed the following opinion and decree :

The plaintiffs, members of the town council of the borough of Ebensburg, seek to restrain the burgess of the said borough, T. M. Richards, Esq., from sitting and voting and otherwise intermeddling in the official sessions of the town council. They allege that subsequent to the act of January 15, 1825, " by proceedings in court, all the rights and privileges of the act of assembly of April 3, 1851, known as the ' General Borough Law,' were extended to said borough," and that under said law the burgess is not a member of council, nor permitted to participate in their deliberations.

The defendant, in his answer, denies : 1. That the borough of Ebensburg has ever adopted the provisions of the act of 1851, in accordance with the terms of that act; and 2. That the provisions of said act deny to him the privilege or right of a member of council :

Opinion of Court below.

I shall address myself to these two questions.

1. While the respondent denies in his answer that the Court of Quarter Sessions by any proceedings ever authorized or decreed the adoption of the act of 1851, as authorized by the act, § 33, the plaintiffs have furnished no record of said court touching the question of such adoption. Indeed, it seems to be admitted by all parties that the records of the Quarter Sessions contain no entry upon the subject. In default of such record, the plaintiff has undertaken to show the fact by evidence aliunde. For this purpose he has, through an examiner, called upon the burgess of 1857–8, and also produced the minute book of the borough, to show that such decree was adopted by the court, entered upon the minute book of the borough, and has governed the corporation from that time till the present.

The testimony of the burgess, Mr. Myers, under exception of the defendant's counsel, was to this effect: "I know we petitioned the court, and got some authority from the court; can't recollect how; on that strength we went on and surveyed and extended the borough; we then proceeded to exercise our authority over the borough as extended; then, in the first year of me being burgess, Thomas Moore discovered something wrong about the extension of the borough, and he filed objections in court; I was held over as burgess for another year, until it would be settled, and the court decided it was all right; after that I heard nothing more about it." The cross examination does not materially affect the foregoing.

The minute book of the town council of the borough of Ebensburg is introduced under objection. From these minutes I find that:

"January 13, 1857, council met and organized. Burgess, James Myers; Council, Richard Tibbott, John Lloyd, David James, John Hughes, and L. Hoover. On motion of councilman John Lloyd, seconded by councilman Hughes, the petition of the inhabitants adjoining and having lots and outlots adjoining the borough, requesting to be annexed thereto, was received, councilman Hoover only dissenting, the ordinance thereto being transcribed in the ordinance book."

"March 4th. At a meeting held March 4, 1857. Present —Burgess, James Myers; John D. Hughes, Richard Tibbott,

Lewis Hoover: The following resolution was passed. Resolved by the Burgess and Town Council of the Borough of Ebensburg, that the Burgess be hereby directed to apply to the Court of Quarter Sessions of the Peace of Cambria county, to have the provisions of the Act of Assembly, ' An act entitled an act regulating Boroughs,' approved the 3rd day of April, 1851, extended to the said Borough of Ebensburg."

" 1857, Decree of the Court of Quarter Sessions of Cambria county : Now, to wit, March 9, 1857, it is ordered and decreed that the said Borough of Ebensburg shall hereafter be subject to the restrictions and possess the powers and privileges granted, by the Act of Assembly, of 1851, entitled ' An act regulating boroughs,' passed the 3d day of April, 1851, and the charter of said borough, so far as inconsistent with said act, be repealed.　　　　　　　　　　　　BY THE COURT."

" A copy of the above decree is filed among the archives of the borough.　　　　Attest: JAMES C. NOON, Clerk."

" March 17th. Council met. Present—Burgess James Myers; Council—D. J. James, Lewis Hoover, R. J. Tibbott and John D. Hughes. On motion of Lewis Hoover the ordinance passed January 13, 1857, annexing outlots to the borough, be and the same is hereby repealed. Carried unanimously. On motion of John D. Hughes, a petition asking that the borough limits be extended, be received and that the borough be extended according to the. desire of said petitioners and the ordinance relating thereto was directed to be transcribed in the ordinance book and published."

The plaintiff has furnished me with the ordinance book, which corroborates' the above and perhaps gives additional light as to the present boundaries of the borough.

The defendant's counsel earnestly contend that these entries in the minute book cannot make a record, and that it requires a production of some evidence from the records of the Quarter Sessions to establish the decree adopting the act of 1851. We agree that this testimony will not, of itself, prove the record. But I think this evidence may raise a presumption, the evidence showing the extension.

On January 15, 1825, the borough of Ebensburg was erected by act of assembly, 8 Sm. L. 354, under the corporate name of " The Burgess and Town council of the Borough of Ebens-

burg." The name under which the borough has sued and been sued since 1857 is " The Borough of Ebensburg." The extent of the borough under the act of 1825 is between Horner and Ogle streets on the north and south, and Sugar alley and Spruce alley on the east and west. Since 1857 the portion annexed by the town council extends in each direction from the former limits, increasing the area of the borough and its population perhaps one third of its original dimensions. I have not been advised of any other possible means by which the borough of Ebensburg now exists and has existed for the last thirty years, than under the provisions of the act of 1851.

From the date of the minutes of council it would appear that the court was in session at the same time the council sat; that the petition and decree had been prepared, the " By the court " indorsement obtained, and the paper taken back to council chamber before any record had been made. Of course this rests in conjecture. But, having acted ostensibly under this authority and continued so to act, with the entire acquiescence of the constituted authorities and the inhabitants of the borough for upwards of thirty years, the defendant cannot complain of the absence of the record of the Quarter Sessions. After a period of thirty years acquiescence the legal presumption arises that all was rightly done. If I am right my ruling may save the borough of Ebensburg much future trouble in regard to taxation, bonds, etc., and preserve the borough in its present integrity.

2. But, assuming that the borough of Ebensburg is within the provisions of the act of 1851, is the burgess a member of council? This must depend entirely on the construction of that act of assembly. In our earlier legislation each borough was a law unto itself. Each community desiring a borough procured a charter of incorporation for itself from the legislature. This became its own municipal law. The act of 1834 was the first general law which I have noticed. In 1851 it was supplanted by the act of April 3d of that year. This act bears the impress of careful preparation, and is much more extensive in its provisions than its predecessor of 1834. The draftsman seemed to carry the idea of national and state government into municipal affairs, and separated the legislative from the executive power. It plainly and specifically sets out

the duties of the burgess, and notwithstanding the eighth section of the act 1834 was before the legislature, it is dropped out. The inference is plain that what was done was intended. The third clause in the sixth section is also significant as to the duties of the burgess.

This question has not reached the Supreme Court. It has, however, received the construction claimed by the plaintiff in Commonwealth v. Kepner, 10 Phila. 510 (1873), PERSHING, J., and Loomis v. Wilkes-Barre, 6 Luz. L. Reg. 150. The editor of Brightly's Purdon indicates the same view, by leaving the eighth section of act of 1834 out of Digest. Per contra, Judge BUTLER, in Price v. Beale, 6 Luz. L. Reg. 149; s. c. 34 Leg. Int. 243, holds that the burgess is a member of council, notwithstanding act of 1851. This case was decided in 1877, but does not refer to Judge PERSHING's opinion. It is strange that this question has not reached our highest court. Until it does we feel safe in following the weight of authority as it accords with our own judgment.

And now, July 2, 1888, this case having been fully argued upon June 9, 1888, by counsel for plaintiff and defendant, thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz.: That the said defendant, T. Mason Richards, burgess of the borough of Ebensburg, be restrained and enjoined from presiding at the meetings of council of said borough, and from interfering in their deliberations by voting or attempting to vote at such meetings, and that he, the said T. Mason Richards, do pay the costs.[5]

Thereupon the defendant took this appeal, and specified that the court erred :

1. In declining to dissolve the preliminary injunction.

2. In receiving evidence other than the record itself for the purpose of showing that the provisions of the act of April 3, 1851, had been extended to the borough of Ebensburg by proper proceedings in the Court of Quarter Sessions of Cambria county.

3. In holding that the evidence submitted on the part of the plaintiffs was sufficient to warrant the conclusion that the borough of Ebensburg was within the act of 1851.

4. In ruling that the burgess of the borough of Ebensburg

was not entitled to preside at the meetings of council or to vote thereat.

5. In entering the decree.[5]

*Mr. Alvin Evans* and *Mr. A. V. Barker*, for the appellant:

1. The silence of the records of the Court of Quarter Sessions, as to the alleged extension of the act of 1851 to the borough of Ebensburg, is sought to be supplied by evidence aliunde. This is not permissible in a collateral proceeding and the evidence taken for that purpose should not have been received and considered. If evidence of this character were even admissible for the purpose offered, the testimony of James Myers, in conjunction with the memoranda found in the minute book, would clearly be insufficient to establish as a fact the allegation that the act of 1851 had been extended to the borough of Ebensburg by proceedings in the Court of Quarter Sessions.

2. The borough of Ebensburg was incorporated by the special act of January 15, 1825, 8 Sm. L. 354. The powers and duties peculiar to the burgess, are found in the sixth and tenth sections of that act. In the sixth section it is provided as follows : " The burgess and council to enact ordinances, assess, apportion and appropriate taxes determined by them ; to appoint town clerk and other officers," and in the tenth section thereof, " in all meetings the burgess to preside." It is quite evident that T. Mason Richards, burgess, in no manner transcended or exceeded the powers vested in him, by the original charter of the borough. That he is plainly warranted in the exercise of these functions and in the performance of these duties unless deprived of such powers by subsequent legislation, must be conceded.

3. But assuming that the act of April 3, 1851, had been legally extended to the borough of Ebensburg, would that result in the curtailment of any of the powers vested in the burgess under the original charter ? Such a condition could only arise when the provisions of the one would be in conflict with the provisions of the other. In the 33d section of the act of April 3, 1851, P. L. 325, is contained this proviso : " That upon such application being confirmed by the said court, the provisions of the former charter shall be annulled

by the decree of the court, so far as they are in conflict with the provisions of this act." It is a well settled principle that if the several statutes relating to boroughs can stand together, the prior are not abrogated by the posterior: McFate's App., 105 Pa. 323. Now, the act of 1851 in none of its provisions expressly declares that a burgess is excluded from either presiding at the meetings of council or voting for clerk and other officers; and it is entirely silent as to who may preside at such meetings.

4. It cannot be successfully urged that the extension of the act of 1851 to a borough that had been previously incorporated by act of assembly, would result in the entire obliteration of its charter conditions. But if such were the case it would seem that the act of 1851 should be taken and construed in conjunction with the act of April 1, 1834, P. L. 163. These two enactments form the general borough law of Pennsylvania, the one being but a supplement to the other; and, where the former is not changed, altered or supplied by the latter they are taken together: McFate's Appeal, supra; Price v. Beale, 34 Leg. Int. 243. In the 8th section of the act of 1834, defining the duties of burgess, this clause is contained: "The burgess shall be president of the town council and shall have and exercise all the rights and privileges of a member thereof; but in case of the absence of the burgess, the members present may elect one of their number to preside for the time being."

*Mr. F. A. Shoemaker*, for the appellees:

1. From the facts as disclosed by the testimony, and from the lapse of time, most assuredly the maxim, omnium præsumuntur rite esse acta, should be applied in this case. Then, has the burgess the right to preside at the meetings of the borough council and to vote at the elections of officers by the council?

2. The act of 1851 arranges for the organization of the borough in plain language, prescribing the duties of the council to make ordinances, lay out streets and impose fines and penalties, and the duties of the burgess to enforce the ordinances, preserve order and to maintain the peace of the borough. That the eighth section of the act of 1834 was omitted from the act of 1851, authorizes a strong inference that it was

designedly omitted. Moreover, the legislature with the knowledge of the fact that the act of 1851 did not confer such powers on the burgess, provided, by § 2, act of June 2, 1871, P. L. 284, that the courts having jurisdiction, "may, in granting an incorporation or upon application made to them for that purpose, fix or change the charter of any borough so as to authorize the burgess or chief executive officer thereof, to serve as a member of the town council with full powers as such, and to preside at the meetings thereof." The court below properly made the injunction perpetual.

OPINION, MR. JUSTICE CLARK:

A preliminary injunction was awarded in this case on March 30, 1888, with leave to the defendant to move to have it dissolved on five days' notice. A motion to dissolve having been made, and notice given, the parties met for argument of that motion, April 9, 1888, when a continuance was had, at the instance of the plaintiff, for the purpose of taking testimony to be read at the hearing, and a "commissioner" or examiner was appointed for that purpose. On June 8, 1888, the report of the examiner was filed, and on July 2, 1888, the opinion of the court was filed, and the decree entered. An answer would appear to have been drawn, under oath, on April 7, 1888, but it does not appear when it was filed, whether before or after the decree, or, indeed, whether it was filed at all. The decree is in the form of a final decree, but, as the testimony was taken and the argument had on the motion to dissolve the preliminary injunction, the action of the court thereon was presumably intended as an order for the continuance of the preliminary injunction until final hearing.

What is known as the "borough of Ebensburg" was originally incorporated by special act of assembly, of January 15, 1825, under the corporate name of the "burgess and town council of the borough of Ebensburg." It is alleged on part of the plaintiff, however, that, upon proper application of the said borough to the Court of Quarter Sessions of Cambria county, in the year 1857, the "burgess and town council of the borough of Ebensburg" became, by the decree of said court, subject to the restrictions, and possessed of the powers and privileges, conferred by the act of April 3,

1851, known as the General Borough Law, but that the proceedings and decree of the said court have been lost or destroyed. At the hearing on the motion to dissolve, the plaintiff attempted to show the execution and loss of this record, and by secondary evidence to establish its contents. To this it was objected that a lost record could not in this way be established by parol; that the record should first be supplied under the provisions of the twenty-sixth section of the act of April 25, 1850, P. L. 573. Whilst doubtless this is the better practice, where there is opportunity to pursue it, there can be no question that after proof of the loss, its contents may be proved, like any other document, by any secondary evidence, where the case does not from its nature disclose the existence of other and better evidence : 1 Greenl. Ev. § 509; Adams v. Betz, 1 W. 425; Harvey v. Thomas, 10 W. 63; Loughry v. McCullough, 1 Pa. 503; Farmers Bank v. Gilson, 6 Pa. 51; Miltimore v. Miltimore, 40 Pa. 151; Clark v. Trindle, 52 Pa. 492; 1 Whart. Ev. §§ 135, 136, and cases there cited. In Miltimore v. Miltimore, supra, Mr. Justice THOMPSON, delivering the opinion of the court, says : " The existence of the power in the court to supply lost records does not interfere with the rule of evidence which admits proof of contents. The loss may not be discovered until the trial is progressing. There would be no time then to file a bill on the chancery side of the court, to perpetuate the proof necessary for a foundation from which to supply the record; and it might be disastrous to one or other of the parties to delay the cause for such a purpose."

But, assuming the power of the court in this respect, it must be conceded that the evidence offered was wholly inadequate for the purpose. To authorize memoriter proof of a lost document or record, the witness must have read it, or otherwise have actual knowledge of it, and be able to speak at least to the substance of the contents : 1 Whart. Ev. § 140; Coxe v. England, 65 Pa. 212. The same kind and measure of proof is required as in the case of the loss of other documents. We will not refer to the evidence in this case, nor discuss it. We merely call attention to the character and quality of the proof required, in order that the case may be properly presented on final hearing. The question upon the construction of the act

of April 3, 1851, as to the duties and powers of the burgess, under the evidence, is not presented in this case. The testimony taken by the examiner, treated as injunction affidavits, is wholly insufficient. We give no opinion upon the construction of the act of 1851, until the question is properly raised for our consideration.

> The decree is reversed, and the preliminary injunction dissolved, without prejudice to the right of the plaintiff to proceed upon his bill to final hearing and decree.

